THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHESTER PARKS, Defendant-Appellant.

Second District   No. 76-79

Opinion filed July 25, 1977.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm Smith, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

A jury found defendant, Chester Parks, guilty of aggravated battery, and the court sentenced him to three years' probation with six months' work release. He appeals, contending that the State failed to prove him guilty beyond a reasonable doubt, and that the trial court erred in failing to grant his motion for a new trial.

This case arose from an attack upon Susan Rossi, a waitress at the Rascal's Restaurant in Naperville. At approximately 12:30 a.m. on February 20, 1975, Mrs. Rossi completed her shift at the restaurant, went out to her car in the restaurant parking lot, cleaned off the windows, and started the engine. As she was waiting for the car to warm up, a man wearing a trench coat approached from behind and opened the car door. For five to ten seconds the man stared at Mrs. Rossi, and she observed his face. The man then grabbed her, saying, "Shut up. I've got a knife. I'll kill you." A struggle ensued as Mrs. Rossi attempted to escape through the car door on her side. Mrs. Rossi never saw a knife, but she testified she felt one as she put her left hand over "the blade" during the struggle; she stated that the knife was about two inches long and no bigger than her fist. After three or four minutes, she was able to break away and run into the restaurant. There she discovered "all kinds of slits" in her gloves which had not been present prior to the attack, and a one-half inch cut on her left hand, which was bleeding slightly. Officer John Schuetz observed the cut on her hand when he arrived, a few minutes after the incident.

Later, Mrs. Rossi picked the defendant's picture from eight or ten photos which were shown her by the police. She stated that "she couldn't say for sure" from the picture, but that she could probably identify her assailant for certain if she had an opportunity to observe him in person. She subsequently returned to the police station and was shown two men wearing trench coats. She asked the two men to stand up and say a few words, which they did. She then identified one of them as her assailant; that man was the defendant, Chester Parks.

At trial, Mrs. Rossi again identified the defendant. She also identified People's Exhibit No. 3 as the glove that she wore on the night in question. She pointed out various slit marks on the glove, stating that they had not been present before the attack, but were present immediately after the attack. However, although the glove thus admitted into evidence was described by the State's attorney as Mrs. Rossi's left glove and has been so described in the briefs submitted to this court, our examination of the exhibit reveals that it is in fact a right-handed glove, containing the slit marks described by Mrs. Rossi.

Deborah Schrader, a waitress at the Dunkin Donuts' coffee shop in Naperville, which is located approximately 200 feet from the Rascal's Restaurant, testified that at 11:30 p.m. on February 19, 1975, she served two men, one of whom she identified as the defendant; the two departed after five to eight minutes, walking toward Rascal's Restaurant.

Officer Schuetz and Detective Studio of Naperville testified that the defendant stated that he did not know where the Rascal's Restaurant or the Dunkin Donuts in Naperville were, as he was being taken into Naperville after his arrest. At the police station, the defendant stated that he thought he had worked at Jackson Storage and Van in Naperville until 7:30 p.m. on February 19, 1975. He told the officers that after work he went to his parents' residence in Lombard and that at 9 p.m. he left there on his way to the Brookfield, Lyons and LaGrange area. He stated further that after having coffee in a Dunkin Donuts' shop in LaGrange between 10:30 and 11 p.m., he went out to his car, but it would not start. He told the officers that he called his girl friend who called a cab for him. He said the cab picked him up at 11:30 at the Dunkin Donuts in LaGrange, and he arrived at his girl friend's Schiller Park apartment at about midnight, and that he stayed there the rest of the night. He told the officers that he was positive about the times and couldn't be any further off than ten to fifteen minutes.

The State produced William Izzo, a cab driver, who testified that he was in the Dunkin Donuts' store in LaGrange at 2 a.m. on February 20, picking up coffee for his fellow workers. At about 2:15 a.m., a man whom Izzo later identified as the defendant, came into the Dunkin Donuts and asked Izzo to take him to Schiller Park. After checking with the company

office, Izzo drove the defendant to Schiller Park. According to Izzo's trip ticket, it was 2:17 a.m. when he and the defendant left the Dunkin Donuts.

The defendant took the stand at trial and gave a somewhat different version of his activities on February 19-20, 1975, than the version he had earlier given the police. He testified that he left his house at 9 p.m. and went to the Beef and Barrel on Butterfield Road. He had a few drinks and something to eat, and then left the Beef and Barrel sometime between 11 and 11:30 p.m. He then went to a lounge called "Show of Shows" on Cicero Avenue and drank some beer. He left that establishment at about 1 o'clock to go home. His car stalled and he had to be pushed into the Dunkin Donuts' parking lot. He took a cab from there to his girl friend's apartment. He denied attacking Susan Rossi and testified that at no time on the night of February 19, or the early morning hours of February 20, 1975, was he at the Dunkin Donuts' shop at Naperville or at the Rascal's Restaurant parking lot, although he admitted that he had had coffee at the Naperville Dunkin Donuts' shop on a number of prior occasions, some months before.

On appeal, it is the defendant's position that, since Mrs. Rossi observed her attacker for only five to ten seconds, at night, and under conditions of sudden surprise, her testimony cannot suffice to sustain the conviction. He argues that the purported unreliability of Mrs. Rossi's identification was amplified by the failure of the Naperville police department to use a lineup when Mrs. Rossi identified the defendant at the station, and Mrs. Rossi's initial statement, after viewing the photos shown her by the police that she "couldn't say for sure" that the photo she had selected was that of her assailant.

The defendant also contends that the State failed to prove that he used a deadly weapon, since Mrs. Rossi never saw any weapon, and further that the State failed to prove that Mrs. Rossi suffered bodily harm, since the lining of the glove admitted as People's Exhibit No. 3 was not penetrated, and there were no blood stains on the glove.

■■ In reviewing the sufficiency of the evidence, the decision of the trier of fact will be affirmed unless the court of review can find a "reasonable and well founded doubt as to the defendant's guilt." (*E.g., People v. Stringer* (1972), 52 Ill. 2d 564, 568; *People v. Johnson* (1972), 8 Ill. App. 3d 457, 459.) The testimony of a single witness, who had ample opportunity to form a positive identification is sufficient to support a conviction, even though such testimony is contradicted by the accused. (*E.g., People v. Jones* (1975), 60 Ill. 2d 300, 307-08; *People v. Reedus* (1977), 46 Ill. App. 3d 427, 429; *People v. Therriault* (1976), 42 Ill. App. 3d 876, 885.) Here the parking lot where the attack occurred was described as "very well lit" by several flood lamps and street lamps, with one flood

lamp shining into the side of Mrs. Rossi's car, and Mrs. Rossi had the opportunity to observe the offender at extremely close quarters as he looked at her after opening the car door. The fact that Mrs. Rossi had only a very short time within which to observe her assailant, was a matter to be considered by the jury in weighing the testimony, but did not render her identification insufficient, as a matter of law, to support the finding of guilty. (See *People v. Chatman* (1975), 32 Ill. App. 3d 506.) Mrs. Rossi's statement that she "couldn't say for sure," after identifying the defendant's photograph, would have had a minimal, if any, effect on her credibility, since common experience tells us that individuals frequently look somewhat different in photographs than they do in person, and Mrs. Rossi's subsequent identification at trial was both positive and unequivocal. (See *People v. Evans* (1976), 42 Ill. App. 3d 902, 909-10.) Similarly, even if it could be said that the procedure employed by the Naperville police department in showing the defendant and one other, similarly attired man to Mrs. Rossi, was unfairly suggestive, Mrs. Rossi's subsequent identification at trial clearly had an origin independent of the identification at the police station, and the sufficiency of the identification to support a conviction was thus unaffected. (*People v. Connolly* (1973), 55 Ill. 2d 421.) The inconsistencies between the defendant's statements to police regarding his movements on the night in question, and his subsequent testimony at trial, raise serious questions as to his credibility. Thus, Mrs. Rossi's testimony and that of the defendant presented a question of fact for the jury to resolve, and we cannot, under the circumstances here, substitute our judgment for that of the jury.

■■ The defendant's contention that the State failed to prove bodily harm is equally lacking in merit, since Mrs. Rossi testified that she was bleeding from a cut on her left hand after the attack, and this testimony was corroborated by Officer John Schuetz. The absence of blood or penetration of the glove lining is readily explainable since the glove which is in evidence was Mrs. Rossi's right glove, and she testified that she received the wound on her left hand.

■■ The defendant's contention that the State failed to prove that he used a deadly weapon presents a somewhat closer question. However, the use of a deadly weapon, like any other element of an offense, may be proved through circumstantial evidence. (*People v. Love* (1974), 23 Ill. App. 3d 76 (abstract).) In *People v. Love* this court affirmed the defendant's conviction for aggravated battery, based upon a stabbing incident, even though no knife was introduced into evidence, and no witness actually saw any knife, since the circumstantial evidence presented established the use of a weapon with reasonable certainty, and the finding of the trial court was therefore not so unsatisfactory as to leave

a reasonable doubt of the defendant's guilt. This case is very similar. Although Mrs. Rossi never saw a knife, she testified that her assailant said "* * * I've got a knife. I'll kill you," and Mrs. Rossi further testified that she felt a knife as she struggled with him. It was uncontradicted that Mrs. Rossi had a cut on her left hand after the incident, and several slits in her gloves, which she testified, had not been present before the attack. There is an apparent discrepancy in Mrs. Rossi's testimony in that she stated that she grabbed the knife (which she could feel but not see) with her left hand, and that her hand was on the knife throughout the struggle, and yet had slit marks in *both* of her gloves afterward. However, such a minor discrepancy in testimony presents a question of credibility to be resolved by the trier of fact and does not justify a court of review in setting aside the jury's verdict. (*People v. Patrick* (1977), 46 Ill. App. 3d 122-23.) Here the evidence as to the defendant's use of a knife was not so unsatisfactory as to leave a reasonable doubt on this question.

■■ Finally, the defendant argues that the trial court erred in failing to grant his motion for a new trial, which raised what he contends is material, newly discovered evidence. We disagree. To justify a new trial, the newly discovered evidence must be material to the issue, and not merely cumulative, of such conclusive character that it will probably change the result on retrial, and must have been discovered since the trial, and be of such a nature that it could not have been discovered prior to trial through the exercise of due diligence. (*People v. Dixon* (1976), 39 Ill. App. 3d 132, 135-36; *People v. Davis* (1975), 33 Ill. App. 3d 105, 110.) Here the defendant's motion incorporated affidavits from a co-worker and neighbor. The affiants both stated that they had seen a person resembling the defendant in the company of a Latin individual in the Naperville area on a number of occasions. A letter from a polygraph examiner indicating that the defendant had submitted to a polygraph examination since his trial and that, in the examiner's opinion, defendant was telling the truth when he denied attacking Susan Rossi, was also attached to the motion. The probative value of this "newly discovered evidence" is highly dubious. Neither of the affiants stated that they had seen an individual resembling the defendant in the Naperville area on the night of February 19-20, 1975, and their testimony could hardly have affected the positive identifications of the defendant by both Susan Rossi and Deborah Schrader. Further the defendant had known both of the affiants for a number of years, and they could not have been unaware of the trial, and yet there is no explanation for the defendant's failure to call them as witnesses at trial. The results of the polygraph examination would have been inadmissible, *e.g., People v. Nicholls* (1970), 44 Ill. 2d 533, 539, and are therefore not supportive of a motion for a new trial. Under these

circumstances, the trial court properly exercised its discretion in denying the defendant's motion.

For the foregoing reasons, the judgment of the circuit court of Du Page County is therefore affirmed.

Judgment affirmed.

SEIDENFELD and BOYLE, JJ., concur.