THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDMOND L. SMITH, Defendant-Appellant.

Third District   No. 76-65, 76-66 cons.

Opinion filed September 8, 1977.

Robert Agostinelli and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Fred R. Odendahl, State's Attorney, of Monmouth (James E. Hinterlong and John X. Breslin, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Warren County finding the defendant, Edmond L. Smith, guilty of burglary and aggravated assault.

Edmond L. Smith was charged with placing Susan Earp in reasonable apprehension of receiving a battery by pointing a gun at her.

The State presented five witnesses: Sharon Patch, Susan Earp, Terry Flanagan, Susan Muth, and Deputy Breuer.

Sharon Patch testified that on the evening of August 9, 1975, Susan Earp was babysitting with the Patch children at their home in Roseville, Illinois. Mr. and Mrs. Patch were at a party. Mrs. Patch did not authorize the defendant to enter her home.

Susan Earp testified that she had fallen asleep on a chair in the living room of the Patch home. Shortly after 2 a.m. she was awakened by a man armed with a gun who wore a nylon stocking over his head. She testified that the gun carried by the intruder was scratched. She also testified that although she did not at first think that the gun was real, she later changed her mind when she got a closer look at it. She did not feel that her assailant would harm her with the weapon at the beginning of the incident when she was assaulted as she was lying down, but she later felt the man would harm her. Her testimony regarding the use of the gun by her assailant after she arose from where she had been lying down was only that he did not directly point the gun at her after she got up. The man asked her to take her top off, but she refused. He asked her about money. He subsequently went into the kitchen. While this man was in the kitchen, Susan went upstairs. Then some men arrived at the Patch home. She told them about her intruder, but he had already left.

A few days later Susan was shown some photographs by a police officer and she identified a man pictured in one of them as her assailant. That man was not Edmond Smith. She was also shown some photographs of male chests and did identify one of the chests as that of her assailant, although she was not positive. The chest was that of Edmond Smith.

Terry Flanagan testified that he lived one block north of the Patch home. During the early morning hours of August 10, 1975, he was awakened by his sister-in-law who told him a strange station wagon was parked in front of his home and that a man had just gotten out of it. Flanagan went to investigate the auto, opening its passenger door and looking inside. He noted the make and model. Then a man appeared and entered the auto. Flanagan described the man as having either a burr haircut or something on top of his head which appeared to mat down his hair, but was not a hat. Flanagan had seen the man running back to his car, hunched over, holding his clothes together and his pants up with one hand and carrying an object in the other hand. Flanagan asked the man where he had been. The man said that he had been visiting the neighbors and then drove away.

A few days later at the police station Flanagan, who was aware that a suspect in the Patch incident was in custody, viewed a photo lineup and identified Edmond Smith as the man whom he had seen in the street during the early morning of August 10, 1975. Flanagan did note that the photograph of Edmond Smith was the only one in the group of six which even resembled the description he had given to the police. Flanagan also made an in-court identification of Edmond Smith.

Susan Muth, Flanagan's sister-in-law, testified that she also identified Edmond Smith as the man whom she had seen.

Deputy Breuer testified that he had served a search warrant on

Edmond Smith at his home in Eureka. Smith was found to be in possession of an auto similar to that seen by Flanagan and Muth in Roseville. A scratched .22 caliber revolver and a nylon stocking were also found in Smith's house. Upon inquiry by police and after appropriate warnings, Smith admitted that he owned the car, but said that neither his car nor himself had been in Roseville and that he was at home with his wife during the early morning hours of August 10, 1975.

The defense presented no evidence. The defendant had waived his right to jury trial. He was found guilty by the court of burglary and aggravated assault. His motion for a new trial was denied.

The defendant raised two issues on appeal:

(1) Where the sole identification of the defendant as the perpetrator of the instant offenses was highly unreliable because of the nature of the criterion employed in making that identification his convictions cannot stand.

(2) The People, in support of the aggravated assault charge, did not introduce sufficient evidence to show that the defendant either pointed a gun at Miss Earp or placed her in reasonable apprehension of receiving a battery as a result of his use of that weapon.

It is of the greatest concern to this court that every man coming before the trial courts in this district shall be given a fair trial. The constitutions of the United States and of the State of Illinois mandate it; we believe that justice and the ascertainment of the truth demand it.

The matter of ascertaining the truth has been the subject of grave concern not only for this court and every other court, but for the general public as well, for each man has his own idea of what constitutes a fair trial.

We in this country have placed the burden of proving guilt upon the prosecution. This is a strict burden because we require that guilt must be proven beyond a reasonable doubt. We have refused to define reasonable doubt, leaving that to the judgment of the trier of fact; however, we have stated many times that beyond a reasonable doubt does not mean beyond all shadow of doubt. Before the prosecution can prove a defendant guilty of a crime beyond reasonable doubt, it must prove that a crime has been committed. The formal method of charging a person with a crime is the information, complaint, or indictment. This pleading must set forth each element of the crime charged and the prosecution must prove, beyond a reasonable doubt, that each element of that crime was committed. (*People v. Cramer* (1921), 298 Ill. 509, 131 N.E. 657.) If each element of the crime charged was not committed, then no crime can be proven and no one can be proven guilty of that crime.

In the instant case, Edmond Smith complains that he was charged with the crime of aggravated assault in that he "did without lawful authority

knowingly point a gun at Susan Earp thereby placing Susan L. Earp in reasonable apprehension of receiving a battery." The Criminal Code provides that the crime of aggravated assault may be committed when one "in committing an assault, * * * [u]ses a deadly weapon." (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1).) A person commits an assault when he "without lawful authority, * * * engages in conduct which places another in reasonable apprehension of receiving a battery." Ill. Rev. Stat. 1975, ch. 38, par. 12—1.

■■ The record shows that Susan Earp's assailant was armed with a gun at the time of the occurrence. There is no doubt that a gun is a deadly weapon. Susan Earp testified that the gun was scratched; a scratched .22 caliber revolver was found in the home of Edmond Smith. There is no apparent dispute regarding the ownership of the weapon and it does not appear that argument was made regarding whether this was the weapon used. Therefore, if there was an assault, there was an aggravated assault. The question is whether Susan Earp was in reasonable apprehension of receiving a battery. The record shows that Susan Earp testified that at one time she did not believe that her attacker was going to hurt her because she thought that the gun was a toy. When she had a closer look at it, she decided that the gun was real and then she decided that this man would hurt her.

■■ Edmond Smith argues that the complaint alleged that he caused Susan Earp to be in reasonable apprehension of receiving a battery when he pointed a gun at her. He then points to a portion of the record which shows that Susan Earp said that when she got up from the chair upon which she was sleeping, the assailant did not point a gun at her. He argues that this means that she could not have been in reasonable apprehension of receiving a battery. However, as the prosecution points out, this is the only reference in which the witness said that the gun was not pointed at her. Edmond Smith asks us to believe that an intruder could enter a home where a young woman was babysitting, that he could awaken the woman at two o'clock a.m., that he could be wearing a mask and carrying a gun, that he could demand money from her and he could ask her to take off her top and he would not thereby place her in reasonable apprehension of receiving a battery from him. We believe that the trier of fact may consider all the circumstances of the occurrence and infer from those circumstances the thoughts of the parties involved. (*People v. Cooper* (1977), 66 Ill. 2d 509, 363 N.E.2d 817.) We find here that the circumstances and the inferences which can be drawn therefrom show that the crime of aggravated assault was committed.

Edmond Smith further argues that the identification of himself as the intruder at the Patch home is so vague and indefinite that the evidence against him is insufficient to prove beyond a reasonable doubt that he was

the person who committed the aggravated assault.

While the identification of the accused as the perpetrator of the offense charged is an important element in the proof, it is an evidentiary matter to be considered and weighed like any other evidentiary matter. The weight to be given testimony regarding identification is a question for the trier of fact. (*People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262; *People v. Barksdale* (1974), 24 Ill. App. 3d 489, 321 N.E.2d 489.) That determination will not be upset unless it is so contrary to the evidence that it cannot be justified. *People v. McDaniel* (1974), 19 Ill. App. 3d 771, 312 N.E.2d 805; *People v. Rogers* (1975), 27 Ill. App. 3d 123, 327 N.E.2d 163.

■■ If the witness did not have a particularly good opportunity to observe the defendant, but nonetheless positively identified the defendant, the weight to be given that identification is a question for the trier of fact. (*People v. Broadnax* (1974), 23 Ill. App. 3d 68, 318 N.E.2d 499.) The trier of fact, in determining the credibility of the testimony of each witness and the weight to be given that testimony, may consider the testimony given by other witnesses and the demeanor of each witness as he testified. *People v. Johnson* (1974), 24 Ill. App. 3d 152, 320 N.E.2d 69.

■■ In the instant case, it must be admitted that Susan Earp did not have an adequate opportunity to observe the face of her assailant because he wore a nylon stocking over his face. She could, however, identify his chest. Further, Terry Flanagan and Susan Muth, who had seen a man in Roseville that night, identified Edmond Smith as the man they saw. At the time they saw him his hair looked matted down as though he had a burr haircut or wore something on his head other than a hat. Susan Earp testified that the gun carried by her assailant was scratched. A scratched .22 caliber revolver and a nylon stocking were found at Smith's home. Terry Flanagan observed and inspected a station wagon parked in front of his home. He further attempted to interrogate the man who entered the station wagon and drove it away. It was later established that the station wagon was owned by the defendant, Edmond Smith.

In examining the evidence adduced against the defendant the inescapable conclusion must be reached that the prosecution proved beyond a reasonable doubt that the defendant was guilty of aggravated assault.

For the reasons stated above, the judgment of the circuit court of Warren County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.