THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BILLY LEE SANDERS, Defendant-Appellant.

Second District   No. 76-362

Opinion filed November 15, 1977.

James Canfield, of Canfield Law Offices, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant appeals from a trial court order revoking his probation contending that (1) he was denied due process of law by the trial court's refusal to suppress a lineup identification which he contends was the result of unfairly suggestive police procedures, and (2) that the sentence of one to 10 years' imprisonment imposed by the trial court was excessive. We affirm.

On January 29, 1975, the defendant was convicted of burglary and sentenced to three years' probation. On June 6, 1975, between 10:15 and 10:30 p.m., Mrs. Ruth Tindell, an elderly woman, left St. Patrick's church, accompanied by her two daughters, Mrs. Ruth Prutch and Judy Moreland. As they were waiting at the top of a stairlanding, Mrs. Prutch observed a "young black boy" with dark trousers, a white print shirt, and

an Afro-style haircut walking toward them. That area of the church grounds was well lit, and she observed the individual until he passed within a few feet of her. As the individual passed Mrs. Tindell he grabbed her purse and ran.

Later that night, Mrs. Tindell, Mrs. Prutch and another witness, were taken to the Winnebago County jail to view a lineup. The witnesses were told that the lineup would contain subjects approximating the height, weight and "general build" of the suspect. The officers told Mrs. Prutch and the other witnesses that there was a possibility that the offender had been wearing a wig, and that he might have removed some of the clothing he had been wearing at the time of the offense.

The witnesses were led into a "viewing room" one at a time, where they observed the lineup. The lineup consisted of five Negro subjects, including the defendant. The defendant's hair was in braids, while the other four subjects' hair was cut in an "Afro" style. At the hearing on defendant's motion to suppress the lineup identification, Mrs. Prutch stated that she viewed the lineup for five to ten minutes; at the probation revocation hearing, she testified that she viewed the lineup for approximately 10 to 15 minutes. After viewing the lineup, she told the officer in charge that she "knew it was No. 1 [the defendant], but he must have changed clothes and had a wig." The officer replied by instructing her to "decide which one she thought it was, or which one she was sure it was, and put her answer down."

Mrs. Prutch also made a positive identification of the defendant at the probation revocation hearing. The defendant testified, denying commission of the offense. He said that he had carried on a phone conversation with his girl friend until 9:50. He then drove to a house, arriving at 10:10. This was corroborated by the defendant's girl friend, and, to some extent, by the testimony of the defendant's mother and 12-year-old brother. However, the times and distances involved were such that the trial court found that with "very minor adjustments" of the testimony of the defense witnesses, "their testimony can fairly well be reconciled" with the defendant having committed the offense in question. The trial court found that Mrs. Prutch was "a highly credible witness" who had the opportunity "to see the defendant at different ranges up to two feet in a well lighted area," and that she identified the defendant "by his facial appearance." The trial court then found the defendant guilty of the offense.

■■ ■ The defendant has argued that the lineup was rendered impermissibly suggestive by the officer's direction to Mrs. Prutch to "decide *which one* it was" (Emphasis added.). The defendant asserts that a police suggestion that the perpetrator of the offense is among those in

the lineup, is violative of the rights of the accused. Since, from a practical standpoint, most witnesses without question understand that they would not have been asked to view the lineup, if the police did not have a suspect in the lineup (*People v. Martin* (1974), 24 Ill. App. 3d 710, 715), we believe that the defendant's argument is without merit. In any event, there could have been no error in this case, since it is apparent from the record that Mrs. Prutch had already selected the defendant as the offender when the remark was made by the police officer.

■■ The defendant also contends that the officer's suggestion that the perpetrator (who had been described as having an Afro-style haircut) may have been wearing a wig, when coupled with the fact that the defendant was the only subject in the lineup who did not have an Afro-style haircut, rendered the lineup improper. However, under the circumstances of this case, we cannot hold that the trial court erred in refusing to suppress the lineup identification. To a considerable extent, the officer's comment that the offender might have changed clothing, or have been wearing a wig, merely stated the obvious, and it does not appear that the officer's remarks were a deliberate effort to influence the result of the lineup. Further, Mrs. Prutch's testimony at the suppression hearing established that she made her identification on the basis of the defendant's face, rather than his other characteristics. Thus, the trial court had sufficient basis to find that the officer's remarks did not influence the outcome of the lineup.

■■ Further, it is clear that a reversal of the trial court's order revoking the defendant's probation would not be proper in this case, even if there were grounds to find the lineup to have been improperly suggestive, since Mrs. Prutch's identification at trial clearly had an origin independent of the lineup. See, *e.g., People v. Moore* (1977), 50 Ill. App. 3d 952, 958; *People v. Parks* (1977), 50 Ill. App. 3d 929, 933.

■■■ Finally, the defendant contends that his sentence is excessive. A sentence should not be disturbed unless it clearly constitutes a great departure from the spirit and purpose of the law. (*E.g., People v. Doyle* (1977), 50 Ill. App. 3d 876.) The trial court is normally the proper forum in which a suitable sentence is to be determined, and the trial judge is in the best position to observe and evaluate the myriad factors which comprise the sentence determination. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) In imposing sentence upon revocation of probation, the trial judge may consider the actions of defendant while on probation, which reasonably bear upon his potential for rehabilitation. (*People v. Koppen* (1975), 29 Ill. App. 3d 29, 32-33.) Here the defendant's commission of the offense of robbery, less than five months after being placed on probation on the burglary charge, reflected very adversely upon his rehabilitative

potential, and we therefore hold that the trial court did not abuse its discretion in sentencing the defendant.

The judgment of the circuit court of Winnebago County is therefore affirmed.

Judgment affirmed..

SEIDENFELD and GUILD, JJ., concur.