THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DOUGLAS DEWAYNE THOMAS, Defendant-Appellant.
Second District   No. 77-114

Opinion filed January 23, 1978.

Ronald J. Clark and David C. Thomas, both of Chicago, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was found guilty of two counts of armed robbery and one count of attempted murder, following a bench trial, and sentenced to concurrent terms of five to eight years imprisonment. He appeals, contending that (1) he was denied a fair trial by the trial court's refusal to admit evidence that the State's case against a co-defendant had been "nolle prossed" because the co-defendant had passed a lie detector test and police investigation indicated that he was not involved, and (2) that the evidence was insufficient to prove him guilty beyond a reasonable doubt. We affirm.

For purposes of this appeal, the evidence may be summarized as follows: On December 30, 1975, at approximately 5:15 p.m. three youths, William Conopeotis, his brother, George Conopeotis, and Bert Foster were confronted by eight black males near the Tee Pee Liquor Store in North Chicago. One of the black men, whom William and George Conopeotis identified as the defendant, was armed with a gun. William Conopeotis and Bert Foster testified that one of the other black men was Mark McBride. According to William Conopeotis' trial testimony, the defendant asked him for money and held a gun on him, while another of the black men took a five dollar bill from his pocket and gave it to the defendant. George Conopeotis stated at trial that it was the defendant who removed the money from William's pocket. George Conopeotis stated that the defendant then approached him and asked him for money. George Conopeotis emptied his pockets, found that he had only a penny, and gave it to the defendant, whereupon the defendant knocked his glasses off and shoved him to the ground. Bert Foster testified that Mark McBride and another man hit him and told him that they wanted his wallet. One of the men took Foster's wallet and removed a dollar. The defendant then came over to the group (McBride, the other man and Foster) and was handed the dollar. The defendant demanded more money, but Foster broke away from the person who was searching him. As he was running, he heard two shots. William Conopeotis testified that he saw the defendant "take shots" as Foster ran, and that he heard two "clicks," followed by two shots. The Conopeotis brothers then broke away from their assailants. The Conopeotis brothers and Foster went to the police station, where they were interviewed together by the police. Foster identified the defendant as one of the robbers, and picked him out of the lineup. William Conopeotis and Foster also identified a photograph of McBride as one of the robbers.

The trial testimony of the Conopeotis brothers and Foster was inconsistent on certain points, and also contradicted some portions of the statements which were given to the police shortly after the arrest. William

Conopeotis stated that someone other than the defendant held him and took his wallet, while George Conopeotis recalled that it was the defendant who took his brother's wallet. William Conopeotis told the police that it had been McBride who checked his pockets, but testified at trial that the person who had searched him was not McBride, and that he could not remember having made a contrary statement to the police. Foster told the police that he had known the defendant prior to the incident, but testified at trial that he had not previously known the defendant. None of the three had been able to give a meaningful description of the offenders, or of their clothing, to the police after the incident. However, there was no inconsistency whatever as to the identification of the defendant as the man involved who held the gun and fired the shots, and in any case, minor discrepancies in a witness' testimony present questions of credibility for the trier of fact to resolve. *People v. Parks* (1977), 50 Ill. App. 3d 929.

The defendant and witnesses who testified on his behalf stated that the defendant had watched a pool tournament and played pool at a barber shop which was located next to the Tee Pee Liquor Store, between 5 and 7 p.m. on the evening of the offense.

There was testimony that George Conopeotis' glasses were knocked off during the robbery. However, the light was adequate for observation since there was testimony that illumination was supplied by a street light. Obviously, the three victims had been able to observe their assailants at close quarters for a not inconsiderable period of time. Further, there was some evidence that both George and William Conopeotis knew the defendant, or at least knew who he was, prior to the robbery; William had attended school with the defendant's brother, although he admitted that he had not spoken to the defendant for a "couple of years," and there was testimony that the defendant had attended an aldermanic victory party at the Conopeotis home. It is perhaps notable that the three youths identified the defendant by name, as one of the assailants, prior to viewing police photos of the lineup, and all three were positive as to their identification of the defendant from the time of the alleged robbery and throughout the trial.

■■■ We have reviewed the record and conclude that the defendant's contention that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt is without merit. The defendant admitted being at a location in the immediate vicinity of the scene of the robbery and any discrepancies in the testimony of the victims, as well as the credibility of the defendant and his alibi witnesses, were clearly matters for the trier of fact to assess and resolve; it would be error for this court to substitute its judgment for that of the experienced trial judge. *E.g., People*

*v. Moore* (1977), 50 Ill. App. 3d 952; *People v. Parks* (1977), 50 Ill. App. 3d 929.

The defendant's other contention presents a somewhat more complicated problem. The gist of his argument is that the trial court erred in excluding certain testimony which would have shown that although William Conopeotis and Bert Foster identified the defendant and McBride as being two of the robbers, the police and State's Attorney subsequently determined that McBride was not involved, the inference being that if William Conopeotis and Foster were mistaken regarding their identification of McBride, then they may have been mistaken in their identification of the defendant as well.

The point arose on two occasions as defense counsel cross-examined prosecution witnesses. During defense cross-examination of William Conopeotis, the defense attempted to introduce photos from the "full line-up" "where McBride was identified." After the prosecution objected to the introduction of the photographs, the court asked defense counsel what their relevance was, and counsel responded that "subsequent evidence will show that the police to their own satisfaction and the State's Attorney to his satisfaction made the determination that Mr. McBride was not involved and all the charges against him were dismissed," and that William Conopeotis' identification of McBride reflected upon the credibility of his identification of the defendant. The trial court sustained this objection. Later, the defense made an effort to solicit testimony on this point through cross-examination of police Detective Semasko, the investigating officer. Defense counsel asked Semasko whether McBride was charged with the robbery of the Conopeotis brothers and Foster, and the prosecution objected. After the objection was sustained, defense counsel asked to be heard. The trial judge stated that he failed to see the relevance of the question, since "whether or not [McBride] was charged has nothing to do with" the instant case. Defense counsel responded that the question was relevant, and indicated that he would show through the testimony of Semasko that McBride was charged with the offense, but that, prior to trial, through the investigation of the police department, "to the satisfaction of the police department and the State's Attorney," it was determined to dismiss the case because McBride was not involved. The trial judge indicated that a decision as to whether or not to try or prosecute a case was nothing more than a judgment of the responsible prosecutor. At this point, the prosecutor averred that the probative value of the prosecutorial decision not to try McBride was further affected by the fact that McBride was a juvenile, and that he believed there were other matters pending against McBride "which were followed through". Defense counsel replied that he would "even go a step further" and

"stated there was an agreement by him [*i.e.,* McBride] that he take a lie detector test and if he passed it, the charge would be dismissed," and that the State "made the determination that one identification is no good" and that that determination had probative value "bearing on the other identification." The trial court was not swayed by the defense counsel's argument and refused to allow the question.

In arguing that the trial judge committed reversible error in refusing to allow this line of questioning, the defendant has placed primary reliance upon *People v. Watkins* (1974), 23 Ill. App. 3d 1054. In *Watkins,* three co-defendants were each charged with various offenses arising out of the armed robbery of a Sears, Roebuck & Co. mail order plant. Each defendant was identified through photographs and a lineup; however, prior to trial, the State nolle prossed the case against one of the defendants, Joseph Brooks. At trial, defense counsel made a "detailed offer of proof" concerning the alibi of Brooks, arguing that the State's nolle pros of the charges against Brooks "in light of the identifications of him as a participant in these crimes and the alibi he was apparently prepared to use at trial," gave rise to an inference that the witnesses' identification of the other defendants could have been mistaken. The trial court sustained the State's objection to this offer of proof. On appeal, it was held that the trial court committed reversible error in not allowing defense cousel to cross-examine the State's witnesses as to their identification of Brooks as one of the robbers, and that evidence of Brooks' alibi would be admissible upon a retrial.

*Watkins* is distinguishable from this case on a number of grounds. In *Watkins,* the defendant made a "detailed offer of proof" which set forth the evidence of Brooks' alibi. Here the offer of proof was silent regarding any underlying facts which would have lead the police and State's Attorney to believe that McBride was not involved, other than the "agreement" that the charges against McBride would be dismissed if he passed the lie detector test. In *Watkins,* the State never challenged the defendant's assertion that the reason for the nolle pros was the legitimacy of Brooks' alibi. At trial in this case, when the matter was raised, the prosecutor indicated that the fact that McBride was a juvenile, and that other charges were believed to be pending against him, may have been a factor in the State's decision to dismiss the charges against McBride. The most important distinction of all between this case and *Watkins,* however, is that the excluded evidence in *Watkins* did not include a reference to the results of a lie detector test. In this case, the defendant offered to prove an agreement by the State to dismiss the case against McBride if McBride passed a lie detector test, the clear inference being that McBride had taken and passed the test. Thus, on the face of the defendant's offer

of proof, the defendant's evidence would have established that the dismissal of the charges against McBride was motivated, at least in part, by the results of a lie detector test.

■■ In view of the specific form and content of the offer of proof, the trial court would not have erred in rejecting the offer, even had there been no reference to the results of any polygraph examination. In the absence of testimony regarding facts indicative of McBride's innocence, the probative value of testimony by Detective Semasko that the responsible persons in the police department and State's Attorney's office had arranged for the dismissal of charges against McBride because they were of the opinion that McBride was innocent, would have been extremely dubious at best. That there was no error becomes abundantly clear upon reference to the offer to prove an "agreement" that the charges against McBride would be dismissed if McBride passed the lie detector test. Our Illinois Supreme Court has clearly held that neither the results of a polygraph examination, nor the fact that such a test is given, is admissible. (*People v. Nicholls* (1970), 44 Ill. 2d 533; *People v. Rutledge* (1977), 45 Ill. App. 3d 779.) Under this rule it is clear that while it may well be that the responsible person in the State's Attorney's office agreed that if McBride passed the polygraph examination the State would move to dismiss charges against him, any reference to such a reason for dismissing the charges would have been improper. Since the State's alleged decision not to prosecute McBride purportedly rested upon two bases—the investigatory determination and the agreement concerning the polygraph examination—it would be misleading to introduce evidence of the dismissal of charges against McBride while striking any reference to the polygraph examination. It is abundantly clear that the trial court properly denied the defendant's offer of proof.

For the foregoing reasons, the judgment of the trial court of Lake County is affirmed.

Judgment affirmed.

NASH and GUILD, JJ., concur.