THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEMOYE LEVERSON, Defendant-Appellant.
First District (2nd Division)    No. 77-1144

Opinion filed March 20, 1979.

Michael Jay Green, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Dale Woloshin, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

After a bench trial LeMoye Leverson[1] and Alfred Walker[2] were found guilty of aggravated battery, aggravated kidnapping and deviate sexual assault. Defendant Leverson was sentenced to serve concurrent prison terms of three to 10 years for aggravated battery and 15 to 30 years for both aggravated kidnapping and deviate sexual assault. Defendant appeals.

---

[1] The record reflects numerous spellings of defendant's name. For the purpose of consistency we have adopted the spelling "LeMoye Leverson" as testified to by defendant.

[2] Co-defendant Alfred Walker is not a party to this appeal.

The issues presented for review are (1) whether the State failed to prove defendant guilty beyond a reasonable doubt and (2) whether the trial court abused its discretion in imposing allegedly excessive sentences.

We affirm.

At trial Claude Ellis, identified as Mary Evans' boyfriend, testified to the following: On the evening of November 2, 1975, Ellis was with Mary Evans, his sister Claudia and the latter's son in Claudia's apartment at 2915 West Lexington in Chicago. At 7:30 p.m. and again at 8:30 p.m. Levar Longstreet (a friend) came to the apartment to warn Ellis that Mary Evans' former "pimp," Alfred Walker, "was looking for us." Ellis left the apartment "to check on some tires" but returned at 8 p.m. Before leaving the apartment for the second time at 8:45 p.m., Ellis warned Ms. Evans not to open the door, stating that he had left for her a gun hidden under the mattress in the bedroom.

Ellis returned to the apartment approximately 10 minutes later and found Mary Evans was missing. Ellis observed Ms. Evans' watch on the floor, but he found the gun still under the mattress.

Mary Evans testified at trial to the following: Until October 1975 she had occasionally worked for Alfred Walker as a prostitute. On November 2, 1975, Mary Evans was "staying with" her boyfriend Claude Ellis at his sister's apartment. Ellis left the apartment at 8:20 p.m., but before leaving he told her he left a gun under a mattress. He warned her not to open the doors. Approximately five minutes after Ellis had left, Ms. Evans heard a knock at the back door. She opened the rear door and "a hand holding a gun" was thrust through the door opening. As she attempted to close the door, a man with a gun came through the front door of the apartment and ordered her to open the rear door.

Mary Evans identified defendant Leverson as one of the two gunmen, but she could not remember through which door he had entered the apartment. Leverson and the other gunman ordered her to accompany them outside to a car parked in the alley. They forced her into the back seat of a car which was occupied by Alfred Walker and an unidentified man in the front seat. Walker accused her of "making his woman run off" and he then struck her on the nose with his gun. The four men remained with her in the car and "they" continually beat her during the drive to an apartment at 1020 West 77th Street. The four men and Ms. Evans were admitted into a first floor apartment by Theodore Johnson. Walker forced her into a bedroom and ordered her to undress and lie "face down" on the bed. She was then tied to the bed and "gagged" with a pair of socks. Johnson went into the living room, but the four men remained with her in the bedroom. Walker then beat her with a coat hanger for approximately 20 minutes while Leverson and the two unidentified men watched. Walker untied her and poured cologne over

her back and buttocks. He then ordered her to go into the bedroom closet. He told her she was to do whatever Leverson wanted her to do.

When she was released from the closet by Leverson, Walker and the two other men had left the apartment. Leverson ordered her to "perform oral sex on him," which she did for approximately 20 minutes. She then requested to go to the bathroom and Leverson agreed, ordering her "to come right back." Observing that Theodore Johnson was alone in the living room, she locked the bathroom door, raised the window and jumped into the alley. She ran until she located a marked police car.

Chicago police officer Wilkins testified that at 11:30 p.m. on November 2, 1975, he was parked in his squad car at 76th and Morgan and saw a naked woman running from an alley. He observed that she had two socks tied around her neck and described her as "hysterical and sobbing." He also observed multiple cuts and lacerations on her buttocks and back.

Officer Wilkins testified that Ms. Evans led him to an open bathroom window at the rear of a building at 1020 West 77th Street. He heard "a commotion" as he entered through the window and unlocked the bathroom door, but he found no one in the apartment. In the bedroom Wilkins found a "hanger wire with an extension cord wrapped around it," a "blood stained" bedspread and a "starter pistol." Leverson and Johnson were stopped by officers as they exited the front door of the apartment building. Ms. Evans identified Leverson as one of her assailants.

Defense witness Theodore Johnson testified to the following: On the evening of November 2, 1975, four men with whom he was not acquainted forced a woman at gunpoint into his apartment. Leverson was not one of these men. Johnson remained in the living room watching television as the men went into the bedroom, forced the woman to strip and beat her with a coat hanger "for five to ten minutes." The men ordered the woman to go into the closet and then left the apartment. Johnson stated that he never saw cologne poured over the woman's back nor did he see her gagged.

Johnson testified that he had asked his neighbor, Lynn Harris, if she could pick up some grocery items for him. Ms. Harris told Johnson that Leverson would deliver them. When Leverson arrived, the "woman" was still in Johnson's closet. When Johnson told Leverson about the woman, Leverson helped Ms. Evans out of the closet and wiped blood off her back. The woman went into the bathroom and Johnson heard two gunshots. He and Leverson then fled the apartment but were stopped outside the building by police.

LeMoye Leverson testified that on November 2, 1975, the following occurred: Leverson left his girlfriend's apartment at 6:30 p.m. and took a

cab to Lynn Harris' apartment at 77th and Carpenter. He remained with Ms. Harris at her apartment until 10 p.m.; then they proceeded to a party at 125th and Halsted Streets. Leverson and Ms. Harris remained at the party for only 20 minutes and then returned to Ms. Harris' apartment at 10:55 p.m. Leverson bought groceries for Theodore Johnson and delivered them to Johnson at 11:05 p.m. Johnson told him about the "woman" in the closet, and Leverson attempted to help her. He did wipe some blood from her back, but he testified that he did not have oral sex with her, nor did he beat her. After the woman had gone into the bathroom, he heard shots. He and Johnson fled but were arrested outside the apartment by police.

Chicago police officer Campion testified that on November 2, 1975, he received a call that there was a man with a gun at 534 West Division Street. Campion arrived there at 11 to 11:15 p.m. and arrested Alfred Walker for possession of a weapon. Officer Campion stated that he was unsure of the time of the arrest; that it could have been 20 minutes before or after 11 p.m.

Co-defendant Alfred Walker testified as follows: During the evening of November 2, 1975, he was at home with his wife and daughter. They left at approximately 9:30 p.m. and proceeded to his mother-in-law's apartment. He remained at her apartment for approximately one hour and started for a tavern across the street. As he was leaving the building in which his mother-in-law lived, he saw the police. Walker ran but was arrested and charged with possession of a weapon.

Walker testified that he had never been to Theodore Johnson's apartment nor did he kidnap or beat Mary Evans. He stated that he had known Mary Evans for a couple of years but that he did not know Mr. Leverson.

Investigator Leuser testified that on November 3, 1975, he had a conversation with Theodore Johnson. Johnson told him that Jerry Wise,[3] Alfred Walker and three other armed men had brought a woman into his apartment. Leuser stated that Johnson never told him that he had heard shots fired "in the bathroom" at his apartment.

It was then stipulated that if Dr. Pacis were called to testify, he would state that he examined Mary Evans at Little Company of Mary Hospital on November 3, 1975. His examination revealed "among other things" that Ms. Evans was suffering from a fracture of the nasal bone. It was further stipulated that if Officer Gibbons were called to testify, he would state that Ms. Evans had received a severe beating.

The court thereupon found Leverson and Walker guilty of aggravated battery, aggravated kidnapping and deviate sexual assault. Leverson appeals.

[3] Not further identified in the record.

## I

Defendant contends that he was not proven guilty beyond a reasonable doubt of deviate sexual assault, aggravated kidnapping and aggravated battery. To sustain conviction on these charges the testimony of the complaining witness must be clear and convincing or corroborated by some other facts or evidence. (*People v. Thompson* (1st Dist. 1978), 57 Ill. App. 3d 134, 140, 372 N.E.2d 1052.) Defendant argues that Ms. Evans' account of her alleged abduction was unworthy of belief and inconsistent with ordinary human behavior.

Mary Evans testified that she was abducted and brought to Theodore Johnson's apartment at "gunpoint" and against her will by Leverson, Walker and two other men. She stated that while she was in a car, Walker struck her in the nose with a gun. In Johnson's bedroom she was beaten, gagged and whipped by Walker, then forced by defendant to perform oral sex upon him. She was able to escape through the bathroom window into the alley.

The record reflects that her testimony was substantially corroborated by the testimony of other witnesses. Claude Ellis discovered Ms. Evans was missing when he returned to his apartment. Theodore Johnson testified that Ms. Evans was brought into his apartment by four men and was subsequently beaten. When police officers discovered Ms. Evans, she was naked, bleeding, and she had a gag tied around her neck. The officers entered Johnson's apartment through an open bathroom window, and in the bedroom they found a "homemade whip," a "blood stained" bedspread and a pistol. It was stipulated that Ms. Evans had received a severe beating and a broken nose. Furthermore, Johnson and Leverson were arrested by police as they left Johnson's apartment.

■■ We believe that the victim's identification of defendant as her assailant and her account of the abduction, together with independent evidence of her physical condition and her actions and complaint to the police after the incident were sufficient to sustain defendant's conviction. See *People v. Birge* (1st Dist. 1974), 20 Ill. App. 3d 824, 314 N.E.2d 323.

Defendant argues that Officer Campion did not recall finding a bottle of cologne in Johnson's bedroom or smelling cologne on the victim, although Ms. Evans testified that Walker poured cologne over her back after the beating. Defendant also contends that the victim's account of the incident was incredible because Walker was arrested outside his mother-in-law's apartment building at the same time Ms. Evans claimed she was ordered into the closet by Walker. The court found that "it was quite possible for the events to have transpired as testified to by the victim, and for Walker to be arrested on the evening in question as testified to by officer Campion." The record is clear that Officer Campion was unsure

regarding the time Walker was arrested. Also, defendant's computation of the time includes the victim's estimates of the duration of various events during her alleged confinement and omits periods of time such as the time involved in Ms. Evans' escape. The record suggests minor discrepancies in the complaining witness' testimony which present a question of her credibility. Where there is any conflict in testimony, it is within the province of the trier of fact to resolve the conflict, determining which witness or witnesses to believe. (*People v. Thomas* (2d Dist. 1978), 56 Ill. App. 3d 809, 372 N.E.2d 681.) While a portion of the complaining witness' testimony may have lacked credibility, there was sufficient corroboration of her testimony to support a finding of guilt. *People v. Myles* (2d Dist. 1975), 31 Ill. App. 3d 45, 333 N.E.2d 643.

■■ Defendant contends that his account of his actions on November 2, 1975, and Theodore Johnson's corroborative testimony were sufficient to raise a reasonable doubt of his guilt. However, the record reveals, and the trial court found, that the testimony of both defendant and Johnson was laden with numerous inconsistencies. The trier of fact is not required to believe defendant's alibi testimony which was contradictory to the positive evidence of the prosecutrix. *People v. Garriott* (3d Dist. 1974), 20 Ill. App. 3d 994, 313 N.E.2d 189.

## II

■■ Defendant contends that the concurrent sentences of three to 10 years for aggravated battery and 15 to 30 years for both deviate sexual assault and aggravated kidnapping were unreasonable and excessive in view of defendant's prior "non-violent" criminal record. We disagree. Even where a defendant has no prior criminal record, a reviewing court is not required to reduce a sentence. See *People v. Ware* (1st Dist. 1973), 11 Ill. App. 3d 697, 703, 297 N.E.2d 289.

The trial judge was in a superior position to assess the circumstances of the case before sentencing. In view of the violent nature of the offense of which defendant was convicted, we cannot say that the sentence imposed by him constituted an abuse of discretion. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882; *People v. Cook* (1st Dist. 1976), 41 Ill. App. 3d 946, 354 N.E.2d 122.

For the foregoing reasons we affirm the judgment of the circuit court of Cook County.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.