THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY MILAM, Defendant-Appellant.
Third District   No. 78-378

Opinion filed January 17, 1980.—Rehearing denied February 15, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial in which he was found guilty of burglary and theft of property valued at more than $150, the defendant, Jerry Milam, was sentenced to concurrent terms of imprisonment of not less than one nor more than three years for the offense of theft and not less than three nor more than nine years for the burglary offense. From this determination the defendant appeals, questioning whether he was proven guilty beyond a reasonable doubt and challenging the propriety of the sentencing procedure employed.

At the trial the victim, Claude Cooper, testified that on November 18, 1979, he purchased a Zenith 23-inch color television set from Grant's Hardware Store, and placed it, still crated, in the trunk of his car. Since the trunk would not close, it was tied down with a rope.

After leaving the hardware store, Cooper drove to the Sea King restaurant on South Chicago Street, Joliet, and parked directly across the street from the restaurant. At that time it was approximately 3:30 p.m. However, after approximately 30 minutes, Cooper noticed that the television set was gone. Asking a woman in the restaurant to call the police, he got into his car and drove down the alley. Approximately 10 minutes after noticing the television was missing Cooper returned to the restaurant.

At that time, the police had already arrived. In the presence of the officers Cooper had a conversation with a woman. He then got into the back seat of the squad car, and with the two officers, they began looking for a blue 1968 Chevrolet containing two black males.

After driving in the area for approximately 10 minutes, Cooper observed a blue Chevrolet on Water Street near the housing project off McDonough Street. Two black males were near the vehicle, reaching down to pick up a television set that was in a crate. Cooper testified that one of the individuals he saw was the defendant, Jerry Milam, whom he had known for approximately two years. The defendant was wearing a brown jacket. The other person was tall and slim, but Cooper did not recall what the tall individual was wearing. The two men looked up and ran. Cooper and one of the officers remained at the car with the television set while the other officer ran after the two men.

Cooper testified that he had a clear view and was sure that one of the individuals he saw that day was the defendant. When he first noticed the car with the television set in it, he was approximately 150 feet away, and when the two people he saw near the car started running, he was approximately 75 feet away. The men disappeared behind a building and that was the last the witness saw of them. The total amount of time that he had the two individuals in his sight was just a "flash," a second or two. According to the witness, it could have been as long as five seconds from the time he first saw the vehicle until the time he saw the two individuals running away.

Cooper also testified that at the scene, he did not tell the police officers that one of the individuals was Jerry Milam. He did not have to because they already knew. The witness did not recall telling the police anything about Jerry Milam. Nor did he tell the assistant State's Attorney he spoke with about a week before the trial that it was Jerry Milam he saw at the car, explaining that he was not asked.

Officer Donald Edgerly of the Joliet police department testified that at approximately 3:50 p.m. on November 18, 1977, he and Officer Hernandez received a call to go to the Sea King Restaurant on a theft report. Upon arrival, the officers were met by Claude Cooper. After Cooper had a conversation with a woman, the officers and Cooper entered the police vehicle and began to look for two black males driving a late model Chevrolet. Edgerly drove the squad car, Hernandez sat in the front seat and Cooper was in the back seat.

After driving approximately 10 minutes, they observed a vehicle located at 370 or 376 South Water Street which matched the description. Edgerly saw two black males standing near the rear of the vehicle, apparently trying to remove a television set from the trunk area. One of the men was tall and the other short. The taller man was approximately 6 feet tall with a slim build. He was wearing brown pants and a blue jacket. The shorter man was approximately 5 feet 8 inches tall and was wearing a brown jacket.

As the police car proceeded toward the vehicle the men fled. Officer Hernandez pursued the subjects while Edgerly remained with Cooper at the vehicle. In the glove compartment of the suspect vehicle, Edgerly found an Illinois State vehicle title in the name of Jerry Milam. He also observed a temporary vehicle registration form on the vehicle's window bearing the defendant's name, and on the front seat of the vehicle, Edgerly found a copy of a court summons bearing the name of Lamont Evans.

On cross-examination, Edgerly testified that he first observed the blue car with the television set in the trunk at a distance of approximately 150 to 200 feet. At the time, Edgerly could see the two individuals who

were near the car. When the two individuals began to run, Edgerly was about 30 to 40 feet away. The witness stated that he had the individuals in his sight for approximately one minute. After they started running, Edgerly had them in sight for 15 to 20 seconds.

Edgerly testified that he believed that Cooper told him that one of the subjects was Jerry Milam, although he did not put that fact in his police report. The witness described his police report as a summary of the most important facts of a situation and agreed that an eyewitness identification at the scene is an important fact.

The State's final witness was Joliet police officer Alam Odenthal. Odenthal testified that on November 18, 1977, he was assigned a general patrol zone on the east side of Joliet. At approximately 4 p.m. he monitered radio traffic with reference to a foot chase in progress. Odenthal immediately proceeded to the area in which the chase was taking place.

Behind a school, Odenthal saw Officer Hernandez on foot. Odenthal stopped and Hernandez entered the squad car. The squad car then entered an alley that led to the parking lot of a housing project. There Odenthal observed, in the middle of the parking lot, two black males that fit the suspects' descriptions. The two men looked toward the squad car and immediately started running. Hernandez pursued one of the men and Odenthal pursued the other. The individual Odenthal pursued was the shorter of the two men and was wearing a brown vinyl leather jacket.

After some foot pursuit, Odenthal ordered the subject to halt. The subject threw his hands up in the air and stopped as quickly as could be expected. Odenthal then placed the subject, subsequently identified as the defendant, under arrest. Odenthal later saw Officer Hernandez with a prisoner identified as Lamont Evans.

After Officer Odenthal's testimony, the parties entered into a stipulation that the value of the television set involved was $598.45, and the State rested. A motion by the defendant for a directed verdict was denied, and the defense called Joliet police officer Regino Hernandez as its first witness.

Officer Hernandez testified that on November 18, 1977, at approximately 3:30 p.m., he and Officer Edgerly received a call in reference to a complaint that a television set had been stolen. Upon arrival, Hernandez spoke to the complainant, Claude Cooper. At that time, three of four women from across the street stated that they had just seen a television in a blue Chevy in a nearby alleyway. Hernandez, Edgerly and Cooper began to search for, and subsequently observed, a blue Chevy with a large cardboard box in the trunk.

There were two black males near the Chevy. One was 5 feet 10 inches tall with a slim build, wearing brown pants and a blue top. The

other man was shorter. Hernandez did not recall what the shorter man was wearing. As the officers exited the squad car, the two men fled from the scene. Hernandez pursued the taller subject. After he lost sight of the subject, Hernandez was picked up in an alleyway by Officer Odenthal.

As Odenthal and Hernandez approached another alleyway, Hernandez noticed two black males. The taller one was the subject Hernandez had been chasing earlier. Hernandez and Odenthal exited the squad car and both subjects ran. Hernandez apprehended the taller man, identified as Lamont Evans. However, the witness did not know whether the shorter subject, apprehended by Odenthal, was the same person seen earlier at the Chevrolet. The person Odenthal arrested was the defendant.

The defendant, testifying in his own behalf, stated that on November 18, 1977, he left his home and drove to the Southtown Liquor store located at the corner of Fifth and Chicago Streets. Arriving at the liquor store, the defendant began drinking with some friends. But, subsequently, an acquaintance named Willie Brown asked the defendant if he wanted to get high. The defendant and Brown proceeded to a small basement in the rear of the liquor store where they shot some heroin. Brown then asked the defendant if he could borrow his car. Although the defendant offered to drive Brown where he wanted to go, Brown indicated that he wanted to pruchase more drugs and that the person from whom he would purchase them did not want anyone else around. The defendant finally agreed to let Brown borrow the car. Brown said he would return in 30 to 45 minutes, and left with a female.

The defendant returned to the tavern and continued drinking. When over an hour passed, he became impatient and went to look for his car. After walking a while, the defendant arrived at the 200 block of Joliet Street. There he saw some individuals including Lamont Evans. The defendant testified that he had seen Evans four to six times in the past but that they were not friends. To the defendant's knowledge, Evans had never been in defendant's car. Of the other individuals present with Evans, one was a slender man about 6 feet, or 6 feet, 2 inches tall. Another was short and fat. The defendant asked those persons if they had seen his car, which defendant described, and they replied that they had not. At that time the police pulled up and the defendant ran. He testified that he ran because he was carrying a hypodermic syringe and needle. However, when the police officer yelled "halt," the defendant stopped, threw his hands up in the air and let the syringe go.

The defendant stated that he had not seen his car since he let Brown borrow it. Brown, according to the defendant, was about the same height as Evans, but the defendant did not recall how either Brown or Evans was dressed ·that day. He also stated that he had known Claude Cooper for

over 5 years and that they would recognize each other. The defendant testified that he did not take a television set from the trunk of Cooper's car.

It is first argued by the defendant that he was not proven guilty beyond a reasonable doubt. The basis of this contention is that Cooper's identification is subject to considerable doubt, according to the defendant, and the remaining circumstantial evidence was not sufficient to support a finding of guilty. Doubt, claims the defendant, is cast upon the identification because of Cooper's lack of opportunity to observe and his failure to inform the police at the scene that he knew the defendant.

■■ The weight to be given to the identification of the accused as the perpetrator of the offense charged is a question for the trier of fact whose determination, unless so contrary to the evidence as to be unjustified, will not be overturned by a reviewing court. (*People v. Smith* (1977), 52 Ill. App. 3d 53, 367 N.E.2d 84.) In considering this question, the trier of fact would have considered the fact that the witness may not have had a particularly good opportunity to observe the defendant (*People v. Smith* (1977), 52 Ill. App. 3d 53, 367 N.E.2d 84), and even the fact that the witness had only a very short time within which to observe the defendant does not render the identification insufficient as a matter of law (*People v. Parks* (1977), 50 Ill. App. 3d 929, 365 N.E.2d 1339.) Furthermore, the testimony of an identification witness is strengthened to the extent of his prior acquaintance with the accused. *People v. Reynolds* (1978), 57 Ill. App. 3d 593, 373 N.E.2d 650.

■■ Here, the witness, who had been acquainted with the defendant for some time, positively identified the defendant as one of the perpetrators as a result of an observation, while only about five seconds in duration, as near as 75 feet from the defendant. The witness testified that nothing obstructed his view and that the entire incident occurred in the afternoon hours of November 18, 1977. We can not say, based on the opportunity of the witness to make an observation, that the determination of the trier of fact was so contrary to the evidence as to be unjustified.

■■ As for the defendant's other challenge to Cooper's identification:

> "It is a general principle of evidence that the failure to assert a fact when it would have been natural to assert it amounts in effect to an assertion of the non-existence of that fact. (Wigmore, Evidence §1042 (3d ed.).) The omission, that is, the failure to assert a fact, is *prima facie* inconsistent conduct which unexplained has the tendency to discredit a witness. [Citations.]" (*People v. King* (1973), 10 Ill. App. 3d 652, 655, 295 N.E.2d 258, 260.)

In the trial court, the witness stated that he did not recall informing the police that he knew one of the offenders to be the defendant. He testified

that he did not have to because they already knew. In addition, the witness explained his failure to make a similar statement to the assistant State's Attorney by testifying that he had not been asked whether he knew either of the perpetrators by name. On the other hand, the police officer on the scene testified that he believed Cooper informed him of Jerry Milam being one of the subjects, although the police officer did not note that fact in his report.

■■ A reviewing court may not substitute its judgment for that of the trier of fact on an issue of credibility and will only reverse a conviction if the evidence is so improbable as to raise a reasonable doubt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) The apparent inconsistency in the witness' conduct here is explained. Whether that explanation is credible is a question for the trier of fact, and it cannot be said to be so improbable as a matter of law as to raise a reasonable doubt. As a result, the finding of guilty will not be overturned.

On the issue of the propriety of the sentencing procedure, the defendant asserts that the trial court erred by failing to inform the defendant of the differences between the present sentencing act and the act in effect prior to February 1, 1978, thereby depriving the defendant of a meaningful election, and that the trial court erred by failing to specify the reasons on the record for the sentences imposed, as is now required in the new act. The record reveals the entire discussion concerning the defendant's election to be a question by the trial court and a response by the defense attorney that "we selected the former law."

■■ Defense counsel's use of the term "we" indicates some prior discussion of and agreement on the matter between the defendant and his counsel. Since the defendant does not contend that he was inadequately counselled and since there is no indication in the record to indicate he misunderstood the consequences of his election, we find no error in the failure of the trial court to inform the defendant of the difference between the old and new acts, that being primarily the responsibility of the defense counsel. *People v. Durham* (1979), 75 Ill. App. 3d 331, 394 N.E.2d 67.

■■ In making the election, a defendant is electing between the alternative sentencing schemes, not specific sentences. (*People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554.) It is, therefore, logical that a defendant cannot pick and choose which portions of each act he wishes to apply. This defendant opted for sentencing under the old act but now argues that the trial judge should have explained his reasons for sentencing as is required by the new act. Having elected to be sentenced under the old act, which does not require a sentencing judge to state for the record his reasons, the defendant cannot now be heard to complain

that the sentencing judge did not state for the record his reasons for the sentence imposed.

Accordingly, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.