(No. 49033.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. ROBERT J. McKINLEY, Appellant.

*Opinion filed November 30, 1977.*

146

Ralph Ruebner, Deputy Defender, and Michael Mulder, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Raymond J. McKoski, and Fred H. Montgomery, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, Robert McKinley, and co-defendants, Frank Kostrzeski and Robert Tobel, were convicted of criminal damage to property exceeding $150 in a joint bench trial in the circuit court of McHenry County. McKinley was sentenced to a term of 1 year to 1 year and a day in prison. The Appellate Court for the Second District affirmed (42 Ill. App. 3d 48), and we allowed defendant's petition for leave to appeal.

Between 6:30 and 7 p.m. on August 4, 1973, Joseph Skalas was a passenger in a car being driven by his brother Wayne. They decided to drive by a house owned by Joseph which was under construction to see how the building was progressing. Upon arriving, they saw at a distance of 20 feet a man standing by a wheelbarrow at the side of the house. Wayne saw him throwing something into the wheelbarrow, and observed him "just for an instant" before the man fled. Joseph entered the house, and a second man ran by him and on outside. Wayne tried unsuccessfully to tackle this individual, who escaped through a barbed-wire fence. Meanwhile Joseph heard a third person moving about on the second floor of the premises, and this person jumped from a second-story window. Wayne chased him into the woods where he was caught. He had apparently injured his leg. When asked what he was doing, he said, "Nothing." Both Wayne and Joseph identified Tobel at trial as the man who jumped from the second floor of the house. Wayne also identified Kostrzeski as the man he almost tackled, and McKinley as the man at the wheelbarrow, but Joseph could not identify

McKinley.

Patrolman Charles Terrill reported to Mrs. Schmidt's residence, adjacent to Skalas' house, in response to a call that someone was hurt. She led him into the woods where Tobel and Wayne Skalas were, and Wayne related to the officer what had happened. Tobel told Officer Terrill he was a carpenter looking around the house to see how it was put together. In response to a question, Tobel said he had been with Kostrzeski and McKinley. At this time, Officer Terrill was unaware of the substantial damage done to the interior of the house, and Tobel was not under arrest. Wayne Skalas gave the officer a description of the other two men he saw which Officer Terrill related as follows: "two young males, one blond and one with darker hair, one wearing a T-shirt and the other had fancy 'mod' type shoes on—the blond subject was supposed to have brownish 'mod' type shoes on *** one subject was supposed to have a purple shirt." The subjects were about 5 feet 7 inches to 5 feet 10 inches tall. The officer radioed Sergeant Hansen, who was in the area, giving him the two names, the descriptions, and McKinley's address, a farm two to four blocks from the damaged house.

Officer Hansen drove to the McKinley address and observed a group of young people in a farmyard, one of whom was wearing a purple shirt and fit the description he had been given. When this individual identified himself as McKinley, Sergeant Hansen arrested and handcuffed him, placing him in the squad car for transportation to the Schmidt residence. The officer explained to defendant his *Miranda* rights, omitting only the information that, if indigent, a lawyer could be appointed for him. The sergeant did not question McKinley, but did tell him he was being taken for identification by two witnesses who saw him leaving the scene of criminal damage to property. McKinley indicated he had not been in the area and stated, "I don't know what Wasso [Tobel's nickname] told you,

but Bob is full of ----." At that point defendant had not been informed by the officer that Tobel was in custody or involved in the offense. Sergeant Hansen then received a radio message from Officer Terrill directing him to return to the McKinley address, where Officer Terrill had two witnesses who might identify McKinley. Sergeant Hansen and defendant arrived at the farm prior to Officer Terrill, and, while waiting, McKinley stated he needed to relieve himself. Officer Hansen took defendant behind a garage and removed one handcuff.

Meanwhile Officer Terrill had informed the Skalas brothers that the police had some people they wanted the brothers to look at, and he drove them to the farm. About 15 young people were standing along the fence line in front of the residence there, and several policemen were present. After being told to look at the group to see if he could pick out anyone whom he had seen at the damaged house, Wayne Skalas identified Kostrzeski, a blond-haired person who was wearing a white T-shirt and tan pants, and two-colored brown, mod shoes. Officer Terrill placed Kostrzeski under arrest. Less than a minute later, Officer Hansen appeared from behind the garage with McKinley, still handcuffed, and approached Officer Terrill, who said, "That's the guy." Sergeant Hansen then walked over to Wayne and asked if the defendant was one of them, and Wayne responded that he was. Wayne and Officer Terrill testified the defendant was wearing a white T-shirt at this time, but Sergeant Hansen testified he was wearing a purple shirt over a T-shirt. There is no dispute that the defendant was clean-shaven when arrested, although Wayne testified the first man at the scene had a "non-descript moustache." These identifications of Kostrzeski and McKinley occurred within 20 to 30 minutes after the Skalas brothers arrived at the damaged house and saw them.

Defendant urges that the one-on-one confrontation

between the defendant and the eyewitness, Wayne Skalas, resulting in an identification of the defendant, violated due process, and that the admission into evidence of defendant's post-arrest statement to Sergeant Hansen violated defendant's privilege against self-incrimination under the rules set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

Until recently, it was unclear in cases involving one-on-one confrontations between an eyewitness and a suspect whether the proper test for the admissibility of evidence of the resulting identification was the "unnecessarily suggestive" test set forth in *Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972, or the "totality of the circumstances" test applied in *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382, to a pre-*Stovall* confrontation. In *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, the Supreme Court affirmed a conviction resting on identification evidence which was obtained in a suggestive and unnecessary manner, and reversed the second circuit court of appeals decision heavily relied on by defendant here. The Supreme Court concluded that "reliability is the linchpin in determining the admissibility of identification testimony ***. The factors to be considered are set out in *Biggers*. 409 U.S., at 199-200." 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.

This court has recognized the suggestiveness inherent in the one-man showup (*People v. Blumenshine* (1969), 42 Ill. 2d 508), and we agree with defendant that the procedure whereby he alone was presented to Wayne Skalas for identification while handcuffed to Sergeant Hansen was suggestive, even though we do not agree with the defendant's interpretation of Officer Terrill's statement, "That's the guy." It appears to us that statement was directed at Sergeant Hansen and referred to Skalas as

the identifying witness, rather than being directed at Skalas and referring to McKinley as defendant argues. There are five factors to be considered and weighed against the effect of this suggestiveness in determining admissibility of the identification: "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.) Wayne Skalas viewed the man by the wheelbarrow from a distance of 20 feet in daylight; he noticed that he was throwing something into the wheelbarrow, and his original description relayed to Sergeant Hansen was sufficiently accurate to permit the officer to pick the defendant out of a group of about 15 young people. It is also noteworthy that Wayne Skalas viewed the group of 15 or so people when he arrived at the McKinley farm, while McKinley was behind the garage, and identified only Kostrzeski, despite Skalas' expectations that two suspects would be there. He unhesitatingly identified McKinley when he subsequently appeared, and his identification at trial was positive. We note, too, that the confrontation occurred within 30 minutes of the offense and within 4 blocks of its location. While there are inconsistencies in the trial testimony, they are not, in our judgment, sufficiently damaging to the reliability of the identification to necessitate its exclusion under *Brathwaite*.

We do not agree with defendant's contention that our decision in *People v. Blumenshine* (1969), 42 Ill. 2d 508, requires reversal. This court has on several occasions upheld a prompt identification of a suspect by a witness or victim near the scene of the crime. (*People v. Manion* (1977), 67 Ill. 2d 564; *People v. Bey* (1972), 51 Ill. 2d

262, 265; *People v. Higgins* (1972), 50 Ill. 2d 221, 227-28, *cert denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195; *People v. Elam* (1972), 50 Ill. 2d 214, 218; *People v. Newell* (1971), 48 Ill. 2d 382, 384-85; *People v. Young* (1970), 46 Ill. 2d 82, 87.) These decisions suggest that Officer Terrill and Sergeant Hansen might have been derelict in their duties if they did not confront the witness with the suspect. The procedure tends to insure accuracy, not bring about misidentifications. It "fosters the desirable objectives of fresh, accurate identifications which may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing offender while the trail is fresh." (*People v. Elam* (1972), 50 Ill. 2d 214, 218.) In such one-on-one confrontations it is, of course, difficult, if not impossible, to avoid some element of suggestiveness. Defendant asserts that this could have been eliminated here by having the witness view the suspect in company with several of the young people gathered there. The officers, however, had probable cause to believe the suspect had run from the Skalas brothers shortly before. In the open area where the identification here occurred, a group viewing which adequately restrained the subject without suggesting his identity would not have been easily achieved. In our opinion the circumstances of the identification here did not involve a constitutional violation.

Defendant's contention that his incriminating post-arrest statement concerning Tobel was inadmissible is without merit. The *Miranda* warnings which Sergeant Hansen read to the defendant were, as the State concedes, incomplete. But that fact does not require the exclusion of volunteered statements, not prompted by interrogation. (*In re Orr* (1967), 38 Ill. 2d 417, 424, *cert. denied* (1968), 391 U.S. 924, 20 L. Ed. 2d 663, 88 S. Ct. 1821.) The record establishes that McKinley's statement was spontaneous and voluntarily made. No questions were pending,

and the statement was not made in response to prior interrogation. Sergeant Hansen, at the time of the statement, was preparing to take McKinley to a location where he could be viewed by the victims of the crime, and he had so informed him. That statement did not call for answers or explanations from defendant. McKinley's statement was properly admitted into evidence. *People v. Moore* (1971), 50 Ill. 2d 24, 27; *People v. Hicks* (1970), 44 Ill. 2d 550, 553, *cert. denied* (1970), 400 U.S. 845, 27 L. Ed. 2d 81, 91 S. Ct. 90.

For the foregoing reasons, the judgments of the appellate and circuit courts are affirmed.

*Judgments affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.