THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT THOMAS, Defendant-Appellant.

Second District   No. 2—89—0857

Opinion filed July 26, 1990.

270

William P. O'Connor, of Orland Park, George P. Lynch and James J. Flynn, both of George Patrick Lynch, Ltd., and Edwin C. Thomas III, of Bell, Boyd & Lloyd, both of Chicago (David M. Novak, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Robert Thomas, was charged with driving under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), driving with an alcohol concentration of .10 or more (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)), improper lane usage (Ill. Rev. Stat. 1987, ch. 95½, par. 11—709), and battery. A jury acquitted defendant of battery but convicted him of the three counts under the Illinois Vehicle Code. The trial judge entered convictions of driving under the influence of alcohol and improper lane usage and sentenced defendant to one year of probation, a fine of $750 plus costs, and counseling.

On appeal, defendant raises the following questions: (1) whether he was prejudiced by improper prosecutorial comments during closing argument; (2) whether the arresting officer had a reasonable suspicion to stop his car; (3) whether the trial court erred in admitting the result of his breathalyzer test where he initially refused and later volunteered to take the test; (4) whether proper foundation was introduced to admit the results of the breath test; and (5) whether the court erred in allowing evidence of his initial refusal to take the breathalyzer test and whether his fifth and sixth amendment rights were violated. For the reasons stated below, we affirm.

Initially, we note that the State correctly charges defendant with a gross violation of Supreme Court Rule 341(e)(6) (113 Ill. 2d R. 341(e)(6)). Defendant's statement of facts is an extremely argumentative, slanted statement that is of no assistance to those who must review his case. We hope that in the future this court will not see such blatant disregard for the rules from counsel.

From our review of the record, we summarize the evidence at trial as follows.

Police officer John Barnacle, a police officer for 5½ years, testified as follows. On February 25, 1988, at 1:35 a.m., he was traveling south on Route 83 when he observed a black Cadillac 100 feet ahead, traveling in the left inside lane. The car went halfway into a left turn lane without signaling and then merged back to the inside lane. The car went about 15 feet into the turn lane for one to two seconds. It then twice merged halfway into the outside lane of traffic. Barnacle activated his lights, and the Cadillac stopped in the left lane. Then, it made a 90-degree turn, crossing over the outside lane, and turned into a gas station where it stopped. The temperature at the time was in the 30's, and it was a clear night.

Defendant got out of the car and met Barnacle in the parking lot. Defendant had slurred speech and a strong odor of alcoholic beverage from two feet away. He was unsteady on his feet. When Barnacle asked him if he knew the time and day, defendant responded that it was around midnight Friday. It was actually 1:35 a.m. Thursday morning. Barnacle then requested defendant to perform field sobriety tests. First, Barnacle instructed defendant to place his feet together, heel to toe, while he listened to the instructions. Defendant repeatedly took his foot away during the instructions. Defendant then began the walking heel-to-toe test before Barnacle instructed him to begin, even though Barnacle told him not to begin until he was instructed. Barnacle told defendant to take nine steps, heel to toe, along a crack in the pavement. Defendant took nine steps but failed to walk heel to toe. He took normal steps, and he swayed when he walked. Defendant repeated the test at his own request and failed it in the same manner. Defendant also failed to complete the one-leg stand test. Defendant could not stand on one leg and count to 30. Barnacle placed defendant under arrest for driving under the influence of alcohol. Defendant was handcuffed because he pulled away from Barnacle after being told he was under arrest. Defendant swore at Barnacle and the other officer at the scene.

At the police station, Barnacle asked whether defendant would take a breathalyzer test. Defendant stated he wanted to talk to his at-

torney before he took the test. Barnacle told him he did not have a right to an attorney, and, if he would not take the test before talking to his attorney, it would be considered a refusal. Defendant was allowed a phone call. As Barnacle stood near defendant on the phone, defendant struck him in the chest. After defendant's brother, an attorney, arrived at the police station and consulted with defendant, defendant stated he wanted to take the breathalyzer test. Barnacle allowed defendant to take the test.

Barnacle observed defendant for 20 minutes before he took the test. In administering the test, Barnacle followed the operational checklist approved by the Department of Public Health (Department) for the Intoxilyzer 5000, a machine he stated was approved by the Department. The readout from the test stated that defendant had a blood-alcohol concentration of .19.

Barnacle took a 40-hour class for training on use of the Intoxilyzer 5000. The class curriculum was approved by the Department. After completion of this class, he was certified to use the Intoxilyzer 5000 and has been recertified every year since. The machine used to test defendant was inspected and certified February 5, 1988, and March 11, 1988, by a representative from the Department. The Department required inspection within 45 days of consecutive months. On cross-examination, Barnacle stated he was not qualified to answer questions about the inner workings of the machine.

Patrick Curtis testified for defendant as follows. He was employed at the gas station where defendant and the officer were parked on February 25, 1988. The temperature that night was 32 degrees below zero with the wind chill. Defendant and the officer were 20 feet from the office where he was standing. He saw defendant stand on one leg for 10 to 15 seconds and then put it down and raise the other leg and stand on it for the same amount of time. Then he saw defendant perform the "arm test." There was no testimony from anyone else about an arm test. He also saw defendant walk heel-to-toe for four to five feet. Defendant did not stagger or stumble. Defendant and his brother returned to the station at 3:30 a.m. and asked him if he had seen defendant's wallet. He did not notice an odor of alcohol on defendant. At this time, he witnessed defendant's driving for 10 minutes as defendant drove his car from the parking lot onto the road. In his opinion, defendant was not under the influence of alcohol. On cross-examination, he testified that that there were two gas islands between the road and the gas station office where he said he was standing 20 feet from the defendant and the officer.

John Bederka testified as an expert on the Intoxilyzer 5000 ma-

chine. He holds a master of science degree in organic chemistry and a doctor's degree in pharmacology. Back in 1968 he worked with infrared technology, which he explained was behind the workings of the Intoxilyzer 5000. He found the Intoxilyzer 5000 to be a crude instrument for measuring the percentage of alcohol in a person's bloodstream because the machine was set for the average person, but not everyone fell within the average setting of the instrument. He explained that the ratio of air to alcohol in the lungs differed for different people and that this ratio did not necessarily correspond to the person's blood level of alcohol. Thus, if a person had a low ratio of air-to-alcohol content in his lungs, the machine would render a high reading, but the person may not have such a high content of blood-alcohol, and vice versa. Bederka had not tested defendant to determine whether he had an average ratio and did not know otherwise whether defendant's ratio fell within the average level. Bederka also stated that he had never used a breathalyzer machine and had never written about the machine.

Robert Wasz testified that, on February 24, 1988, he was with the defendant at a restaurant in Oak Brook Terrace where they attended a board of directors meeting that later turned into a dinner and more business discussion. The board meeting began about 7:30 p.m. and lasted for an hour to two hours. No alcoholic beverages were served at the board meeting. After the meeting, everyone had a cocktail and ordered dinner. Defendant probably had some wine with dinner. After dinner, everyone drank coffee because serious matters were still being discussed. He left the restaurant about midnight and was not sure whether defendant walked out with him or not. In his opinion, defendant was not intoxicated. On cross-examination he stated he was not counting defendant's drinks or paying attention to what he drank.

Edwin Thomas, defendant's brother, testified he did not detect an odor of alcohol coming from defendant at the police station. Defendant had no difficulty walking when he saw him. He brought defendant back to his car at the gas station and followed him out of the station as defendant drove home. He noticed nothing unusual about defendant's driving. In his opinion, defendant was not under the influence of alcohol.

Defendant testified as follows. He had two glasses of wine during dinner after the board meeting. He had a full meal for dinner. He drank his first glass of wine at about 10 p.m., and after dinner he drank decaffeinated coffee for about 1½ hours. When he left the restaurant at about 12:30 or 12:45 a.m., he was not under the influence of alcohol. While driving south on Route 83, he proceeded south of

Hinsdale when he saw Officer Barnacle's police car, traveling north, make a U-turn and follow behind him. Defendant did not drive outside his lane of traffic. When the officer put his lights on, he slowed down, put on his blinker, and crossed over to the gas station on the right side of the road. He never stopped in the left lane.

Defendant got out of the car and walked toward the officer, about 20 feet from the gas station office. It was very cold and windy. He asked the officer why he was stopped, and the officer asked for his driver's license. He showed his driver's license and asked again why he was stopped. The officer told him he wanted him to take some tests. He agreed to take the tests. He walked heel-to-toe without difficulty and successfully performed the one-legged stand counting to 10. His speech was not slurred. He did not struggle with the officer or call him names after he was arrested. Nor did he strike the officer at the police station.

Defendant introduced into evidence a copy of a weather report stating that the weather at O'Hare Airport on February 25 ranged from 14 to 27 degrees. At 3 a.m., it was 15 degrees.

In rebuttal, Officer Barnacle testified that he was not driving north on Route 83 prior to stopping defendant.

■ In his first argument, defendant contends the prosecutor made numerous prejudicially improper comments during closing argument. A prosecutor is generally permitted wide latitude in closing argument, and improper remarks will not merit reversal unless they result in substantial prejudice to defendant. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 445.) A court will consider the context of the language used, its relationship to the evidence, and its effect on defendant's right to a fair trial (*Thompkins*, 121 Ill. 2d at 445) in determining whether the prosecutor's comments constituted a material factor in defendant's conviction (*People v. Clark* (1972), 52 Ill. 2d 374; *People v. Lyles* (1985), 106 Ill. 2d 373, 391). An instruction that closing arguments are not evidence and any statement not based on the evidence should be disregarded tends to cure possible prejudice from improper remarks. (*People v. Smith* (1982), 111 Ill. App. 3d 895, 906.) Also, where a timely objection is made to improper argument, the court can usually correct the error by sustaining the objection or instructing the jury to disregard the remark. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577.) With these principles in mind, we consider defendant's contentions.

■ First, defendant contends the State improperly commented on defendant's failure to call a witness. The prosecutor stated:

"If Mr. Lynch [defense counsel] wanted Officer Svehla [the

other officer at the scene] here so badly he could have subpoenaed him."

The trial court sustained defendant's objection. The State acknowledges that, ordinarily, it is improper for the State to comment upon a defendant's failure to call a witness (*People v. Smith*, 111 Ill. App. 3d at 906), but contends it was not improper in this case because the comment was invited by defense counsel. We agree. Here, defense counsel brought out that the State had not called the other officer at the scene, raising an inference that the officer would not have corroborated Officer Barnacle's testimony. Thus, the defendant invited the State's comment, and, therefore, it was not improper. See *Smith*, 111 Ill. App. 3d at 907; *People v. Angelly* (1988), 167 Ill. App. 3d 477, 485.

Second, defendant, citing *People v. Meredith* (1980), 84 Ill. App. 3d 1065, argues the prosecutor improperly referred to defendant's exercise of his right to counsel. *Meredith* is distinguished from this case. In *Meredith*, the prosecutor stated that defendant called his attorney because he knew he shot two people. The court ruled that this was reversible error because it equated the exercise of a constitutional right to an inference of an admission of guilt, thus penalizing defendant for exercising his right. (*Meredith*, 84 Ill. App. 3d at 1071-72.) In this case, the prosecutor's comments did not raise an inference that defendant contacted his attorney because he knew he was guilty.

The prosecutor discussed the fact that defendant called his brother, an attorney. This fact was mentioned merely as a fact in the sequence of events from the time defendant was arrested to the time that he left the station. Furthermore, as defendant's brother testified as a witness at trial, it was not improper to comment on the fact that defendant called him to the station. The prosecutor also mentioned defendant's attorney when he stated defendant decided to take the breathalyzer test after he talked to his brother and decided enough time had passed. While there is an inference of guilt in this statement, the prosecutor was not arguing, as in *Meredith*, that the inference arose from the fact that defendant contacted or spoke to his attorney. Rather, the inference arose from the fact that defendant changed his mind about the breath test. Thus, we do not find this comment improper.

■ Third, defendant argues the prosecutor misrepresented facts by misrepresenting the distance from O'Hare Airport to the scene of the accident. The prosecutor stated the airport was an hour to an hour and a half from the scene. This comment was made in regard to the weather report from O'Hare Airport that defendant introduced into evidence. Defendant argues on appeal that the distance was only

15 miles. At trial, there was no discussion of the distance or traveling time from the scene to O'Hare. The prosecutor's statement was improper as it was not based on the evidence. (See *People v. Smith*, 111 Ill. App. 3d at 906.) Furthermore, though there was no evidence of the distance or traveling time to the airport from the scene, we recognize that the prosecutor's statement was likely an inaccurate account of the time it would take to get from the scene to the airport. Nonetheless, we fail to see how this comment could have substantially prejudiced defendant. The issue of the distance to the airport was a remote collateral issue relevant only to the collateral issue of the weather conditions on the night in question. There is no reasonable possibility that the prosecutor's comment prejudiced defendant.

Fourth, defendant argues the prosecutor engaged in unwarranted disparagement of defense counsel when he made the following comment:

> "Mr. O'Connor asked the officer wasn't it 15 degrees out, minus 30 wind chill factor? That's what Mr. O'Connor wanted the evidence to show. Wouldn't you know, in strolls Mr. Curtis, what a coincidence. What was the weather like, Mr. Curtis? Well, it was about 15 degrees out and the wind was really blowing. It was about 30 degrees below zero wind chill factor out that night. Little coincidence, ladies and gentleman, don't you think? Little coincidental. Wouldn't you know Mr. Curtis says the exact same thing Mr. O'Connor said."

Unless based on some evidence, statements made in closing argument by the prosecutor which suggest that defense counsel suborned perjury are improper. (*People v. Emerson* (1983), 97 Ill. 2d 487, 497.) As the prosecutor's comments raise an inference that defense counsel suborned perjury, and there is no evidence that defense counsel suborned perjury, the comments are improper. The comments do not, however, reach a level of prejudice that requires reversal. Cases that have typically found remarks of this nature to be reversible error have involved much more direct and blatant attacks against defense counsel. See *Emerson*, 97 Ill. 2d 487, 498 (prosecutor stated all defense attorneys try to "dirty up the victim"); *People v. Weathers* (1975), 62 Ill. 2d 114, 118-20 (prosecutor charged defendant's attorney with lying and with attempting to create reasonable doubt with confusion, indecision and misrepresentation); *People v. Starks* (1983), 116 Ill. App. 3d 384, 394 (prosecutor stated jury should not be "hoodwinked" and "fooled" by "that defense, that pack of lies" and expressed chagrin at having to listen for 45 minutes to "the most ridiculous double talk" by defendant's counsel); *People v. Brown* (1983), 113

Ill. App. 3d 625, 630 (prosecutor repeatedly called defense counsel a "slickster," a "mouthpiece," and a liar).

■ Fifth, defendant argues that the prosecutor improperly attempted to place the weight of the court behind the State's case. The comment objected to came within the following argument:

> "Everything is a cock and bull story. Mr. Thomas is the unluckiest guy in the world here and we are all standing here and we are all making this up against Mr. Thomas because we all have an axe to grind and we don't like Mr. Thomas. Unluckiest guy in the world. *If the evidence wasn't sufficient in this case, he would have told you it wasn't.*" (Emphasis added.)

Following this comment, defendant immediately moved for a mistrial. The judge denied the motion but sustained the objection. The italicized comment was clearly an improper reference to the trial court. The comment is prejudicial in that it places the integrity of the court behind the State's case. It allows an inference that the State's case has been endorsed by the court. A similar type comment was held improper in *People v. Weathers* (62 Ill. 2d at 119-20). In *Weathers*, the prosecutor argued that the court knew defendant had committed the crime. (*Weathers*, 62 Ill. 2d at 119.) The trial court sustained defendant's objection, stating, "I agree with that. I don't know that. Everybody knows that, but the jury will decide." (*Weathers*, 62 Ill. 2d at 119.) *Weathers* ruled that the way the objection was sustained was not adequate to cure the error and held that this comment along with other improper comments constituted reversible error. *Weathers*, 62 Ill. 2d at 120.

The State argues in this case that the record does not make clear that the State's comment was in reference to the trial court. This is not persuasive. The only reasonable interpretation is that the prosecutor was referring to the trial court when he used the pronoun "he." It would make little sense for the prosecutor to refer to defendant or defense counsel in this context. Clearly, defendant and his counsel had already made clear to the jury that they believed the evidence was not sufficient.

The difficult question in this case is whether this comment substantially prejudiced defendant so as to require reversal. After careful consideration, we conclude that it did not. This case does not rise to the level of impropriety in *People v. Weathers*, where the prosecutor made several clearly prejudicial comments along with the comment about the trial court. (*Weathers*, 62 Ill. 2d at 118-20.) In this case, other comments were improper, but none were clearly prejudicial. Also, we believe the comment in *Weathers* was more prejudicial than

in this case, as the prosecutor stated that the court knew defendant was guilty, and the trial court's comments after the objection were somewhat confusing. In the case at bar, the comment went to the sufficiency of the evidence, not guilt, and the trial court made no confusing comments in sustaining the objection. We also look to the evidence in making our decision, and we find the State had a strong case against defendant. The officer's testimony was corroborated by the result of the breathalyzer test. The only other witness to the field sobriety tests, Patrick Curtis, did not present entirely credible testimony. He testified to a field "arm test" that neither defendant nor the officer testified took place. He also stated, more than once, that in observing defendant drive from the parking lot to the road later than night, he observed defendant's driving for 10 minutes, a highly implausible feat.

In his next issue, defendant contends in the heading to his argument that the police officer lacked probable cause to arrest him; therefore, there was no basis for his conviction for improper lane usage. Within the argument portion of this issue, however, defendant argues that the officer lacked a reasonable suspicion to make the stop and asserts that the fruits of the stop should have been excluded. Defendant's argument is confusing in that he addresses three standards in the same breath: probable cause, reasonable suspicion, and insufficient evidence to convict. Since the defendant only discusses the issue of the officer's reasonable suspicion in his argument, we find the other issues are waived. 113 Ill. 2d R. 341(e)(7).

Defendant's argument is all the more confusing because of the procedural sequence that transpired below. Defendant filed a motion to suppress, alleging the State lacked probable cause to arrest and violated defendant's right to due process. At the hearing, the State contended that a hearing was unnecessary because there had already been a summary suspension hearing in which defendant challenged the officer's reasonable suspicion to stop his car, and the trial judge found in favor of the State. The court allowed defendant an opportunity to offer more evidence on the issue of probable cause as alleged in his motion. Defendant elected to stand on the arguments presented at the summary suspension hearing in regard to probable cause and proceeded only on the due process issue. The record from the summary suspension hearing has not been made a part of the record on appeal. Thus, it appears that, in regard to issues of suppression due to the State's alleged lack of reasonable suspicion and probable cause, defendant has failed to include the relevant portion of the record. An appellant has the burden to present a sufficiently complete

record, and, in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92.) Nonetheless, since, in determining the correctness of a trial court's decision on a motion to suppress, an appellate court may consider evidence presented at trial (*People v. Pettis* (1989), 184 Ill. App. 3d 743, 752), we will consider the issue according to the evidence presented at trial.

■■ A trial court's decision on a motion to suppress will not be disturbed unless it is manifestly erroneous. (*People v. Collins* (1987), 154 Ill. App. 3d 149, 151.) Whether a stop is justified is determined by whether the officer had a reasonable, articulable suspicion of criminal activity. (*People v. Repp* (1988), 165 Ill. App. 3d 90, 94.) At trial, Officer Barnacle testified that he stopped defendant because he observed him merge halfway into another lane on three occasions. Defendant denies this conduct and argues that Barnacle's testimony is unbelievable because he testified that defendant traveled into the other lane of traffic for one to two seconds, traveling about 15 feet each time. Defendant argues that the speed limit on the road was 45 miles per hour and defendant would had to have traveled 10 miles per hour to have gone only 15 feet in one second. Defendant's argument does not persuade us. Barnacle's testimony need not be read under scientific scrutiny. Barnacle stated that 15 feet was an estimate. The trial court could have properly found that 15 feet was a believable estimate where the officer testified that he was traveling behind defendant and where the amount of time was only one to two seconds. We find the trial court properly decided that the officer's testimony was more believable than defendant's. See *People v. Morgan* (1986), 112 Ill. 2d 111, 136 (a court of review should not encroach upon the trier of fact's function of weighing credibility).

■ We find without merit defendant's contention that his initial refusal to take a breath test precluded the State from introducing the results of the breath test he later requested. In *People v. Romano* (1985), 139 Ill. App. 3d 999, 1007, this court held that an initial refusal did not bar admission of the results of a later test. See also *People v. Frazier* (1984), 123 Ill. App. 3d 563, 567-68 (there was no reason to prohibit a driver from taking a test if he or she has reconsidered an initial refusal).

Defendant next contends the State failed to offer a sufficient foundation for admission of the breath test result. In *People v. Clark* (1989), 178 Ill. App. 3d 848, 855, this court noted the foundational requirements for admission of a breath test result as stated in *People v.*

*Orth* (1988), 124 Ill. 2d 326, 340:

> "(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist."

Defendant argues that the State failed to introduce a proper foundation to show that the breathalyzer machine was reliable and accurate. We disagree. Officer Barnacle testified that the instrument was inspected by the Department of Public Health every 45 days within consecutive months and had been inspected and certified on February 5, 1988, and March 11, 1988. The State entered into evidence copies of stamps that documented the certification on these dates. The stamps state that the instrument was accurate and precise within the limits prescribed by the Department and are signed by the inspector. The State also entered entries made by the inspector in the police department's breathalyzer logbook, which state that the instrument was certified on the date signed by the inspector.

We find this evidence sufficient to establish that the machine was approved by the Department and tested regularly for accuracy. (*People v. Hester* (1980), 88 Ill. App. 3d 391; *People v. Black* (1980), 84 Ill. App. 3d 1050.) Defendant's contention that Officer Barnacle was not qualified to testify to this evidence is also not persuasive. In *People v. Hester* (88 Ill. App. 3d at 394-95), this court ruled that a page from the instrument logbook was admissible as a public document, and, under *People v. Black* (84 Ill. App. 3d 1050), the testifying officer need not have personal knowledge of the events and procedures summarized in the logbook. In *People v. Black* (84 Ill. App. 3d at 1053), the court ruled that a decal attached to the breathalyzer instrument fell under the public document exception to the hearsay rule. Further, the court held that the officer could testify to the contents of the decal, which was left attached to the machine back at the station, based on his personal knowledge of its contents. *Black*, 84 Ill. App. 3d at 1053.

Defendant also argues that since he presented testimony that the breathalyzer machine was unreliable, the State had to offer more

proof in making proper foundation. Defendant fails to cite any authority for this position, and it is not persuasive otherwise. We find defendant's argument goes to the weight of the evidence, not to whether the evidence was admissible.

In his last issue, defendant actually raises three issues: (1) whether the court erred in allowing evidence of defendant's initial refusal to take the breath test; (2) whether statements made by defendant following his stop and later arrest should have been suppressed where defendant was not read his *Miranda* rights; and (3) whether defendant was denied his right to counsel.

■■■ As to the first issue, the Illinois Vehicle Code provides that evidence of a refusal is admissible in a criminal action. The relevant section states:

"If a person under arrest refuses to submit to a chemical test under the provisions of Section 11—501.1, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol, or other drugs, or combination of both was driving or in actual physical control of a motor vehicle." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(c).)

In spite of this statute, the Appellate Court for the Third District ruled in *People v. Naseef* (1984), 127 Ill. App. 3d 70, that, where a refusal is followed by submission to testing, it is not admissible. The court noted that, prior to 1982, a defendant's refusal was inadmissible (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(h)) and held that the legislative intent behind allowing a refusal into evidence was to provide an incentive to take the test, and the legislature did not intend to include drivers who initially refused but later submitted to the test. (*Naseef*, 127 Ill. App. 3d at 73.) Rather, the legislature intended to provide a driver with a continuing option to prevent admission of his refusal by taking the test. (*Naseef*, 127 Ill. App. 3d at 73.) The State acknowledges this case, but cites *People v. Roberts* (1983), 115 Ill. App. 3d 384, 387, where this court held that evidence of a refusal to take field sobriety tests was admissible as it was similar to other circumstantial evidence of consciousness of guilt which may be inferred from a defendant's conduct. We note that *Roberts* is distinguishable in that the defendant in *Roberts* did not later submit to a test.

We believe *Naseef* is wrongly decided, and we decline to follow it. In our opinion, the *Naseef* court engaged in unnecessary statutory construction of a perfectly clear, unambiguous statute. When the language of a statute is unambiguous, the only legitimate function of the courts is to enforce the law as enacted without resorting to supple-

mentary principles of statutory construction. (*People v. Lueloff* (1987), 161 Ill. App. 3d 432, 435.) The language of the statute here states unequivocally that evidence of a refusal is admissible in a criminal proceeding. In *Naseef*, the court inappropriately added a new provision to the statute: that is, that a defendant has the continuing option to deny admission of a refusal by taking the test. We note that the court cited no evidence, such as legislative debate, to indicate that the legislature intended to include this option. Furthermore, we add that neither Illinois statutes nor the due process clause of the United States Constitution requires that a defendant be informed that a refusal could be used against him or her at trial. See Ill. Rev. Stat. 1987, ch. 95½, par. 501.1(c); *South Dakota v. Neville* (1983), 459 U.S. 553, 566, 74 L. Ed. 2d 748, 760, 103 S. Ct. 916, 924.

As we recently held in *Roberts*, evidence of a refusal is relevant to show consciousness of guilt. (*Roberts*, 115 Ill. App. 3d at 387.) The fact that a defendant later submits to a test does not make evidence of a refusal irrelevant. The evidence may be less probative, but we find it is still relevant to show consciousness of guilt. In the instant case, the State properly argued that defendant later decided to take the test because he decided that enough time had passed since he had ingested the alcohol. We finally note that there is no fifth amendment bar to this evidence. The United States Supreme Court has ruled that a refusal to take a blood-alcohol test is not an act coerced by the officer, and, thus, it is not protected by the privilege against self-incrimination. *South Dakota v. Neville* (1983), 459 U.S. 553, 564, 74 L. Ed. 2d 748, 759, 103 S. Ct. 916, 923; see also *People v. Roberts*, 115 Ill. App. 3d at 387-88.

■ Next, we find no merit to defendant's argument that statements he made at the stop prior to his arrest should be suppressed. A driver stopped for a traffic violation is not in custody until or unless he has been arrested. (*People v. Nunes* (1986), 143 Ill. App. 3d 1072, 1075.) Thus, any statements made by defendant before his arrest are admissible. (*Nunes*, 143 Ill. App. 3d at 1075.) Defendant also argues that evidence of his resistance to handcuffing and his foul remarks to the police must be suppressed because this evidence came after his arrest and before he was read his *Miranda* rights. This is not persuasive. *Miranda* safeguards come into play whenever a person in custody is subject to direct questioning or its functional equivalent. (*People v. Scott* (1987), 159 Ill. App. 3d 459, 463.) Here, the only evidence that came as a result of police questioning is defendant's refusal to take a breath test and his refusal to submit to field tests at the police station. As already explained, these are not acts protected

by the right against self-incrimination. *Roberts*, 115 Ill. App. 3d at 387-88.

Defendant lastly contends that his sixth amendment right to counsel was violated. This argument is without merit. As the State notes, defendant's argument seems to be one sounding more in the fifth amendment, which was just addressed. At any rate, assuming defendant contends that he had a right to confer with counsel before submitting to a breath test or a field sobriety test, this argument is without merit. The decision of whether to submit to a breath test is not a critical stage in the proceedings such that a defendant has a right to confer with counsel. *People v. Okun* (1986), 144 Ill. App. 3d 1066.

The decision of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and McLAREN, J., concur.